**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 1:21-cv-20904-PCH/Becerra

TERRY MCLEOD,

      Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT[2]**

    **THIS CAUSE** came before the Court on the Parties' Cross Motions for Summary Judgment.  ECF Nos. [20], [23].  Plaintiff, Terry Mcleod ("Plaintiff" or "Mcleod"), filed his Motion for Summary Judgment ("Plaintiff's Motion").  ECF No. [20].  Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Motion").  ECF Nos. [23], [24].[3]  Plaintiff filed a Reply.  ECF No. [30].  The Court must now determine whether the decision reached by the Administrative Law Judge (the "ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a review of the Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS**

---

[1] Although the case style originally listed Andrew Saul as Defendant, Kilolo Kijakazi is now the Commissioner of Social Security and is automatically substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] This matter was referred to the undersigned by the Honorable Paul C. Huck, Senior United States District Judge.  ECF No. [2].

[3] Although the docket reflects that Defendant filed a separate Response to Plaintiff's Motion, ECF No. [24], it is the same document as Defendant's Motion, ECF No. [23].

that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**, and Defendant's

Motion be **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

On February 14, 2019, Plaintiff filed a Title II application for disability insurance benefits

and a Title XVI application for supplemental security income benefits, alleging a disability onset

date of June 25, 2018.  R. at 247, 253–54.[4]  Plaintiff was born on September 12, 1979 and was

thirty-eight years old on the alleged disability onset date and thirty-nine years old at the time the

application was filed.  *Id.* at 75.  The Social Security Administration ("SSA") initially denied

Plaintiff's claim on May 3, 2019, and again upon reconsideration on June 25, 2019.  *Id.* at 88–89,

104, 124–25, 141–42.  Plaintiff requested a hearing, which was held on May 5, 2020.  *Id.* at 169,

38–71.  A vocational expert, Jeff Barrett (the "VE"), testified at the hearing.  *Id.* at 38.  On May

19, 2020, the ALJ denied Plaintiff's application.  *Id.* at 20–32.  Thereafter, Plaintiff requested

review of the ALJ's decision.  *Id.* at 6.  On January 11, 2021, the Appeals Council denied Plaintiff's

request for review.  *Id.* at 6–8.  Having exhausted all available administrative remedies, and

pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A.  The SSA Hearing

Plaintiff testified that he completed high school and had a commercial driver's license.  *Id.*

at 45–46.  Plaintiff stated that between 2005 and 2018, he was employed by Miami-Dade County

as a bus driver.  *Id.* at 46.  During that time, Plaintiff explained that he operated all types of buses,

which required among other things that he assist passengers by lifting wheelchair ramps that

weighed between fifteen and thirty pounds.  *Id.* at 46–47.  Plaintiff stated that between 2017 and

---

[4] References herein to "R. at __" are to the Social Security transcript, which can be found at ECF
No. [17].  The page numbers to the transcript referenced herein refer to those assigned by the
Court's electronic docketing system as found on the top right corner of the page.

2018, he worked as a structure repairer for Miami-Dade County responsible for conducting repairs of Metrorail facilities. *Id.* at 47. Plaintiff explained that as a structure repairer, he fixed building structures and rails, which often required lifting between thirty and eighty pounds. *Id.* at 47–48. At the hearing, Plaintiff testified as to several physical limitations. Plaintiff testified that he has pain that radiates from his spine into his arms, and that on a scale from one to ten with ten being the most severe, his left arm pain was between a "six or seven" and his right arm pain was "a four or five." *Id.* at 48–49. Plaintiff stated that he was left-handed and that he was experiencing carpal tunnel in his left elbow and both hands. *Id.* at 49. Plaintiff noted that the carpal tunnel restricted his movement. *Id.* He explained that some time before the hearing, he was washing dishes and he broke a glass because he was unable to hold it. *Id.* As a result, Plaintiff stated that he was forced to get eight stitches in his left finger and that he no longer does dishes. *Id.* Plaintiff further stated that he experiences numbness and tingling in both hands, which makes it difficult to hold, release, and pick up items with his hands. *Id.* at 59–60. Plaintiff stated that he refrains from lifting and carrying things. *Id.* at 60. Plaintiff testified that he also has knee pain that was "anywhere between maybe five, six, or seven," and the pain in his right leg was "maybe a four or five." *Id.* at 49–50. Plaintiff testified he has pain in his spine fluctuated "between a six and an eight." *Id.* at 50. In addition, Plaintiff stated that both shoulders hurt and that he had difficulty reaching particularly with his left shoulder. *Id.* at 61–62. Plaintiff testified that when he experiences pain, he takes medication. *Id.* at 50. Plaintiff stated that the medication was working and that he did not experience any negative side effects. *Id.* at 50–51.

Plaintiff also testified that, since approximately 2014, he has been suffering from depression. *Id.* at 51. Plaintiff testified that he has not experienced any improvement and that "[s]ome days are better than others." *Id.* Plaintiff stated that as a result of his depression, he cannot

do much with his children, including playing any games with them. *Id.* at 52. Plaintiff stated that he takes anti-anxiety and anti-depressant medication and has not experienced any negative side effects from those medications. *Id.* at 53. However, Plaintiff testified that he was addicted to his prescribed opioids as a method of dealing with pain. *Id.*

Plaintiff testified that his daily routine includes waking up, watering the grass, turning the sprinklers on, talking to his children, and eating cereal and milk with his oldest daughter. *Id.* at 53–54. Plaintiff stated that he lives with his four-year-old daughter, his five-year-old twins, and his nineteen-year-old daughter. *Id.* at 54–54. He stated that his two brothers and mother visit him almost every day to shop, cook his meals, care for his younger daughters (e.g., bathing and dressing them), and assist in any other way he needs. *Id.* at 54–55.

As to his ability to care for himself, Plaintiff testified that he had difficulty dressing himself and washing his feet. *Id.* at 60. He stated that he relies on a cane to walk. *Id.* Plaintiff stated that he can only sit between five and ten minutes before he has to stand up and walk around. *Id.* at 61. Plaintiff also stated that he can only remain standing between five and ten minutes before he needs to sit down. *Id.* Plaintiff stated that although he had a driver's license and a car registered in Miami-Dade, he refrains from driving. *Id.* at 56–57. Plaintiff testified that the farthest he drives is to the store, which is no more than an eight-minute drive from his home. *Id.* Plaintiff stated that all he does recreationally is speak with his children. *Id.* at 58–59.

The VE also testified at the hearing. *Id.* at 62. The VE stated that, in the past, Plaintiff performed the following occupations: (1) bus driver, Dictionary of Occupational Title ("DOT") Code 913.463-010, medium duty, Specific Vocational Preparation ("SVP") 4; and (2) construction worker II, DOT Code 869.687-026, very heavy, SVP 2. *Id.* at 64. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's past relevant work and who could only function

4

at a light exertional level.  *Id.*  The ALJ stated that this individual: could stand or walk for a total of four hours with normal breaks; could sit for six hours total in an eight-hour workday; could occasionally climb ramps and stairs, ladders, and scaffolds; could occasionally balance; could occasionally stoop, kneel, crouch, and crawl; could frequently reach in any direction bilaterally, including overhead; could frequently handle bilaterally; could frequently feel bilaterally; and is left-hand dominant.  *Id.*  The VE testified that this hypothetical individual would not be able to perform Plaintiff's past relevant perform because that work required medium and very heavy duty. *Id.* at 64–65.  The VE testified, however, that there were other jobs in the national economy that this hypothetical individual could perform.  *Id.* at 65.  The VE stated that because the hypothetical individual could only perform light duty with the capacity to stand and walk for only four hours, the workstations must permit the job to be performed seated.  *Id.*  Thus, the VE stated that this hypothetical individual could perform the following jobs: (1) ticket taker–DOT Code 344.667-010, light duty, SVP of 2–for which there were approximately 37,467 jobs nationwide; (2) ticket seller– DOT Code 211.467-030, light duty, SVP of 2–for which there were approximately 47,782 jobs nationwide; and (3) marker–DOT 209.587-034, light duty, SVP of 2– for which there were approximately 218,880 jobs nationwide.  *Id.* at 65.

Next, the ALJ asked the VE to consider a second hypothetical individual who had the same age, educational background, and vocational history as Plaintiff.  *Id.*  The VE stated that this second hypothetical individual had the same limitations as the first hypothetical individual but also balanced with the assistance of a handheld device, specifically a quad cane, and was limited to simple, routine, and repetitive tasks.  *Id.* at 65–66.  The VE testified that this second hypothetical individual would still be able to perform the jobs previously provided.  *Id.* at 66.  The VE explained that an SVP of two, which is all that was required for the jobs previously identified, requires simple

tasks meaning routine and repetitive. *Id.*[5]  In addition, the VE stated that the jobs identified are workstation occupations such that the need for a quad cane would not be an issue, so long as a "stool or seat" was available for use. *Id.*  The ALJ asked the VE to consider a third hypothetical individual with the same limitations as the second hypothetical individual but who could only work a total of six hours in an eight-hour workday and would be off-task at least two hours in an eight-hour workday due to pain and fatigue. *Id.*  The VE testified that this hypothetical individual could not perform any jobs in the national economy that exist in significant numbers. *Id.* at 66–67.  The VE testified that his answers regarding the three hypothetical individuals were based on the Dictionary of Occupational Titles. *Id.* at 67.  The VE further stated that his testimony regarding employer standards and expectations, such as the length of a workday, was "based on data provided by the Department of Labor as well as [his] experience working with employers and employees in the labor market." *Id.* at 67.

Upon examination by Plaintiff's counsel, the VE testified that an individual who had the same limitations as the second hypothetical individual but was limited to occasional handling, feeling, and fingering due to cervical myelopathy and carpal tunnel syndrome would not be able to perform the jobs provided but would be able to perform other jobs in the national economy. *Id.* at 67–68.  The VE testified that there were other jobs available in the national economy even if this hypothetical individual required the use of a cane because "workstation occupations allow the presence of a cane" and there is "no need to ambulate through the work area on a repetitive basis." *Id.* at 68.  Plaintiff's attorney asked the VE to consider a hypothetical individual who could only stand or walk for five to ten minutes at a time, could rarely (meaning one-third of the day) stoop,

---

[5] Later in the hearing, the VE clarified that an individual who is limited to simple, routine, and repetitive tasks would be able to do detailed work so long as the work is detailed and repetitive. R. at 70.

crouch, crawl, climb stairs, climb ladders, and could use his hand to grasp, turn, and twist about five percent of the day. *Id.* The VE testified that this hypothetical individual would not be able to perform any jobs in the national economy. *Id.* at 68–69. When asked about the maximum time off task employers tolerate, the VE testified that this depends on the productivity that is required by each occupation. *Id.* at 69. Specifically, the VE stated that "an occupation requiring production or production pace would have 5% or less off task that would be accepted by an employer," but for office work, "which is less specific in productivity and less directly supervised," an employer would tolerate up to 15% of the workday off task. *Id.* Finally, the VE testified that, for unskilled workers, employers typically allow six to ten days of unpaid absence per year and, as such, an individual who would be absent two days or more per month would be terminated. *Id.*

### B. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff "bears the burden of proving that [s]he is disabled," and "[s]he is responsible for producing evidence in support of [her] claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is "currently engaged

in substantial gainful activity"; at step two, the ALJ must determine whether the claimant suffers from "severe"[6] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is able to return to his past relevant work given his Residual Functional Capacity ("RFC");[7] and if not, at step five, the ALJ must determine whether the claimant is able to perform other work as it exists in the national economy, given her age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability[,]" "[a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C. The ALJ's Decision

On May 19, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 25, 2018. R. at 31–32. In reaching this decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 21–22; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 Fed. App'x at 910. At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity after the alleged

---

[6] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to perform basic work activities "for a continuous period of at least twelve months," or is "expected to result in death." 20 C.F.R. §§ 404.1509, 404.1522.

[7] RFC is defined as "the most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 404.1545(a).

onset date.  *Id.* at 22–23.  Specifically, the ALJ noted that in the third quarter of 2018, Plaintiff was employed as a bus driver and earned approximately $4,212 in that quarter.  *Id.*  However, the ALJ stated that Plaintiff ceased work activity prior to the filing of the application.  *Id.* at 23.  Because Plaintiff had not engaged in substantial gainful activity for a continuous twelve-month period, the ALJ concluded that Plaintiff satisfied the step one requirements.  *Id.*

At step two, the ALJ determined that Plaintiff suffers from four "severe" impairments: (1) spine disorders; (2) peripheral neuropathy; (3) ulnar neuropathy; and (4) carpal tunnel syndrome.  *Id.*  The ALJ determined that these "medically determinable impairments significantly limit the ability to perform basic work activities."  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff's impairments did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[8]  *Id.* at 25.  Next, the ALJ determined that Plaintiff's severe impairments could cause the alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  *Id.* at 26.  Thus, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 C.F.R. § 404.1567(b)[9] and 416.967(b)" with the following limitations: could "stand or walk for a total of

---

[8] The Listing of Impairments is a predetermined set of "major body systems impairments that [are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience" that would render an individual disabled. 20 C.F.R. § 416.925(a).  An individual's impairment is "medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment."  *Id.* § 416.926(a); *see also id.* § 416.920(d).

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

four hours with normal breaks"; could "sit for a total of six hours in an eight hour workday"; could "occasionally climb ramps, stairs, ladders, scaffolds, balance, stoop, kneel, crouch, or crawl"; could "frequently reach in any direction bilaterally, including overhead, handling, fingering, and feeling"; could "balance[] with the assistance of an assistive device, to wit a quad cane; "is left hand dominant"; and "is limited to simple, routine, repetitive tasks." *Id.* at 25.

At step four, the ALJ accepted the VE's testimony and determined that Plaintiff could not perform his past relevant work as a bus driver and construction worker. *Id.* at 29. The ALJ noted that because Plaintiff was thirty-eight years old on the alleged onset date, he was considered a "younger individual" under the Social Security Act. *Id.* In addition, the ALJ noted that Plaintiff had a high school education and could communicate in English. *Id.*

At step five, the ALJ determined that Plaintiff could perform other jobs in the national economy, including ticket taker and marker. *Id.* at 30. The ALJ noted that Plaintiff's RFC limited him to four hours of standing or walking as well as simple, routine, and repetitive tasks. *Id.* The ALJ stated that, at the hearing, the VE testified that the occupations identified could be performed at a workstation while seated and only require an SVP of two, which entails simple, routine, and repetitive tasks. *Id.* The ALJ stated that although there was an apparent conflict regarding the RFC's standing limitation with the DOT's light exertional requirements for the occupations identified, there was a reasonable basis for the VE's opinion that these jobs could be performed at a workstation to accommodate for the RFC's limitations. *Id.* at 31. Moreover, the ALJ stated that there was no conflict between the RFC's limitation to simple, routine, and repetitive tasks and the DOT's description of the jobs identified by the VE because they each require a reasoning level

these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

two that involves "commonsense understanding to carry out detailed but uninvolved written or oral instructions." *Id.* (quotation omitted). The ALJ explained that there was a reasonable basis to accept the VE's opinion with respect to these jobs because:

> while the claimant does have non-severe mental health impairments, his mental status examinations revealed generally benign findings in that he was alert, cooperative, fully oriented, his memory was within normal limits, he was well groomed, he was alert, he appeared his stated age, his attention and concentration were good, he was capable of sustaining attention and focus, his thought process was logical and goal directed, his short term memory was satisfactory, his long term memory was fair, his general knowledge was satisfactory, his ability to complete mental calculations was satisfactory, his social skills were satisfactory, he was able to express a thought through writing a complete sentence, he is largely able to complete most activities of daily living on his own, he has good ability to complete complex commands, and he denied suicidal and homicidal ideations. The claimant is also a high school graduate and had a commercial driver's license.

*Id.* (internal citation omitted). Thus, the ALJ concluded that "considering [Plaintiff]'s age, education, work experience, and residual functional capacity, [he] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and "[a] finding of 'not disabled' is therefore appropriate. *Id.*

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In reviewing the ALJ's decision, a court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment' for that of the Commissioner." *Matos v. Comm'r of Soc. Sec.*, No. 21-

11764, 2022 WL 97144, at *3 (11th Cir. Jan. 10, 2022) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that "the evidence preponderates against the Commissioner's findings," the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See* Crawford, 363 F.3d at 1158–59.  In this respect, "the ALJ has a basic obligation to develop a full and fair record[,]" given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision "to determine whether the correct legal standards were applied."  *Id.*  However, no "presumption of validity attaches to the [ALJ's] conclusions of law."  *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## III.    ANALYSIS

Plaintiff advances three arguments.  First, Plaintiff argues that the ALJ improperly discounted the opinion of Dr. Josenie Desamour ("Dr. Desamour"), Plaintiff's treating physician, because: (1) the ALJ "improperly found that her opinion did not meet the threshold persuasiveness requirements"; (2) Dr. Desamour's assessment of Plaintiff's medical condition is not inconsistent with Dr. Khema Ram Sharma's ("Dr. Sharma") opinion, as the ALJ concluded; (3) the ALJ does not explain how "the objective evidence is inconsistent with Dr. Desamour's medical opinion"; and (4) the ALJ's finding that Plaintiff could frequently reach overhead and reach and handle is contradicted by Dr. Desamour's medical opinion that Plaintiff's ability to use his hands, fingers, and arms was limited to 5% of an eight-hour workday.  *Id.* at 10–12, 14.

Second, Plaintiff argues that the ALJ's finding at step five is not supported by substantial evidence because the ALJ failed to resolve an apparent conflict between the VE's testimony and the DOT.  *Id.* at 16–17.  Specifically, Plaintiff argues that the jobs of ticket taker and marker require frequent reaching and handling, per their DOT description.  *Id.* at 17.  Plaintiff argues that because he is medically required to use a cane, he would only have "one hand free with which to manipulate objects."  *Id.* at 17–18.  Thus, Plaintiff argues that the "inconsistency is readily apparent" and should have been resolved by the ALJ.  *Id.* at 18.

Finally, Plaintiff argues that he was deprived of a valid administrative process because it was unconstitutional for the Commissioner to serve a longer term than the President but could only be removed for cause.  *Id.*  Plaintiff states that because the ALJ decided this case pursuant to regulations promulgated by the Commissioner who had no constitutional authority, this case should be remanded.  *Id.* at 19.

In response, Defendant argues that the ALJ properly found Dr. Desamour's opinion to be unpersuasive because under the new standards, the ALJ was not required to give this opinion controlling weight.  ECF No. [23] at 6.  Defendant argues that the ALJ sufficiently accounted for Dr. Desamour's opinion because the opinion does not reflect that Plaintiff had undergone the recommended physical therapy and that the extreme limitations discussed by Dr. Desamour were not consistent with more recent records, which suggested improvements in Plaintiff's limitations.  *Id.* at 7–8.  Defendant further argues that the ALJ properly found that Plaintiff could frequently reach overhead because this finding is consistent with record.  *Id.* at 9.

Second, Defendant argues that the ALJ properly resolved all conflicts between the VE's testimony and the DOT.  *Id.* at 9–10.  Defendant argues that the ALJ's opinion notes Plaintiff's standing limitation and resolves any conflict based on the VE's testimony that the jobs provided

could be performed from a workstation with the availability of a stool or a seat. *Id.* at 10. Moreover, Defendant notes the VE's testimony that an individual with a cane could perform these jobs despite the need for handling, fingering, and feeling because the presence of a seat at the workstation would militate against any handling concerns. *Id.*

Finally, Defendant argues that there is no basis to remand this case because Plaintiff cannot establish any nexus between the removal for cause restriction and the appointment of the ALJ who denied his claim. *Id.* at 12–13. Defendant states that the ALJ who denied Plaintiff's claim held office under the then-acting commissioner, who enjoyed no statutory tenure and was removable at will. *Id.* at 13–14. Moreover, Defendant argues that Plaintiff cannot show how the President's "inability to remove the Commissioner without cause affected any [of the] ALJ's disability benefits decision" or that it "affected the Appeals Council's denial of review of his specific claim." *Id.* at 15. Defendant further argues that even if the Commissioner's tenured position affected the ALJ's determination, the rule of necessity controls because it would have left Plaintiff without a forum to apply for disability benefits and to adjudicate his claim. *Id.* at 18–19.

Plaintiff replies by re-stating that the ALJ's did not set forth a sufficient basis for discounting Dr. Desamour's medical opinion. ECF No. [30] at 1–4. Plaintiff further states that because the Commissioner's delegation of authority was unconstitutional, this case should be remanded. *Id.* at 8. Finally, Plaintiff argues that he is not required to prove causation because the harm in this case is presumed, as the Commissioner's exercise of power was unlawful. *Id.* Plaintiff offered no reply to the argument that there was an apparent conflict in the VE's testimony.

### A.    The ALJ's RFC Determination Is Not Supported By Substantial Evidence.

An ALJ's RFC determination must be "based on all relevant medical and other evidence, of a claimant's remaining ability to work despite [a claimant's] impairment." *Castle v. Colvin*,

557 F. App'x 849, 852 (11th Cir. 2014).  In determining a claimant's RFC, "the ALJ must consider

all medical opinions in the claimant's case record together with other pertinent evidence."  Duffy

v. Comm'r of Soc. Sec., 736 F. App'x 834, 836 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1520(e),

416.920(e)).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of

evidence in [the] decision," however, the ALJ's decision must contain sufficient detail so that the

court can determine that the ALJ considered the claimant's medical condition as a whole.  *Lewen*

*v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015); *see Sims v. Comm'r of Soc. Sec.*,

706 F. App'x 595, 601–02 (11th Cir. 2017) (noting that although the opinion need not specifically

refer to every piece of evidence, it "must contain sufficient detail so that [the court] can conclude

that the ALJ considered the claimant's medical condition as a whole in assessing her residual

functional capacity").

     Effective March 27, 2017, the Social Security Administration implemented new

regulations related to the evaluation of medical opinions, which provide in pertinent part:

> (a) How we consider medical opinions and prior administrative medical findings.
> We will not defer or give any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) or prior administrative medical finding(s),
> including those from your medical sources. When a medical source provides one
> or more medical opinions or prior administrative medical findings, we will consider
> those medical opinions or prior administrative medical findings from that medical
> source together using the factors listed in paragraphs (c)(1) through (c)(5) of this
> section, as appropriate. The most important factors we consider when we evaluate
> the persuasiveness of medical opinions and prior administrative medical findings
> are supportability (paragraph (c)(1) of this section) and consistency (paragraph
> (c)(2) of this section). We will articulate how we considered the medical opinions
> and prior administrative medical findings in your claim according to paragraph (b)
> of this section.

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Subparagraph (c) provides that the factors to be

considered include: (1) supportability; (2) consistency; (3) relationship with the claimant (which

includes consideration of the length of treatment relationship; frequency of examination; purpose

of treatment relationship; extent of treatment relationship; and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *Id.* §§ 404.1520c(c), 416.920c(c).

Because Plaintiff filed his applications for disability benefits on February 14, 2019—after the March 27, 2017 regulations went into effect—the new regulations apply. Pursuant to the new regulations the Commissioner is "not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the most important factors the Commissioner will consider when determining the persuasiveness of medical opinions are supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations state that the Commissioner must explain how he considered the supportability and consistency factors in the determination or decision. *Id.* Despite the changes to the regulations, the current versions "still instruct[] an ALJ to weigh all medical opinions in light of the length, purpose and extent of the treatment relationship and frequency of examinations which continues to indicate the importance of treating physicians' opinions–especially where the physician has maintained a longstanding and consistent relationship with the claimant." *Brown v. Comm'r of Soc. Sec*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *3 (M.D. Fla. July 12, 2021) (citation and quotations omitted). However, an "ALJ need not discuss every piece of evidence in its decision." *Matos*, 2022 WL 97144, at *3 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Further, "[a] medical source's opinion that a claimant is 'disabled' or 'unable to work' is not dispositive of a disability claim because the disability determination is reserved to an ALJ acting on behalf of the Commissioner." *Id.* (quoting *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1339 (11th Cir. 2021)).

In this case, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations: could "stand or walk for a total of four hours with normal breaks"; could "sit for a total of six hours in an eight hour workday"; could "occasionally climb ramps, stairs, ladders, scaffolds, balance, stoop, kneel, crouch, or crawl"; could "frequently reach in any direction bilaterally, including overhead, handling, fingering, and feeling"; could "balance[] with the assistance of an assistive device, to wit a quad cane; "is left hand dominant"; and "is limited to simple, routine, repetitive tasks."  R. at 25.  In reaching this conclusion, the ALJ rejected portions of the medical opinion rendered by Plaintiff's treating physician, Dr. Desamour.  Indeed, the ALJ could not have accepted Dr. Desamour's opinion and reached that RFC determination because Dr. Desamour's opinion supported more significant limitations.  Specifically, Dr. Desamour's July 2019 Statement provides that Plaintiff can walk less than one block without rest or severe pain, can sit for up to ten minutes, can stand for up to five minutes, can sit and stand less than two hours in an eight-hour workday, and can reach, handle, and finger less than five percent of an eight-hour workday.  *Id.* at 675–76.

The issue here is whether the ALJ provided sufficient justification for discounting Dr. Desamour's medical opinion.  The undersigned finds that the ALJ opinion did not.  Specifically, the ALJ's opinion acknowledged Dr. Desamour's treatment notes from December 2018 and January 2019, as well as a July 2019 Physical Medical Source Statement.  *Id.* at 28–29.  The ALJ then found, without any further discussion, that Dr. Desamour's opinion was "persuasive to the extent it is consistent with the record and residual functional capacity; however, to the extent it is more limited than the record would support, it is not as persuasive as the objective evidence."  *Id.* at 29.  Although the new regulations do not require that the ALJ give Dr. Desamour's opinion great weight, the ALJ must nevertheless articulate *how* he considered the medical opinions in the

record. 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . ."). Specifically, the ALJ must explain his consideration of supportability and consistency. *Id.* § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."); *Id.* §§ 404.1520c(c)(1)-(2) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "the more consistent a medical opinion(s) or prior administration medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

In discounting the opinion "to the extent it is more limited than the record would support," the ALJ makes no other reference and does not cite to any portion of the record. Indeed, a reading of the ALJ's opinion provides no insight as to *what* portions of the record are inconsistent with Dr. Desamour's opinion. At best, the Court can conclude, given that both doctors are mentioned in the same paragraph, that Dr. Desamour's opinion is not supported by the record because the ALJ found Dr. Sharma's opinion to be more persuasive. However, the ALJ cannot point to two different medical opinions, pick one as more persuasive than the other without any articulation as to why it is more persuasive, and then discount one opinion simply because it contradicts the other. To the extent the basis for discounting Dr. Desamour's opinion is that it is not supported by the record evidence, there is nothing in the decision that points the Court to that record evidence other than the opinion of another doctor who simply provided a different opinion.

Defendant's argument on this issue highlights the deficiency in the ALJ's opinion. Defendant argues that the ALJ properly discounted Dr. Desamour's opinion because the opinion "did not reflect Plaintiff's condition after undergoing recommended treatment" and the ALJ discussed Dr. Sharma's "more recent records that are not consistent with the extreme limitations Dr. Desamour identified." *Id.* at 7–8. However, the justifications provided by Defendant are not contained within the ALJ's decision, nor are they justifications that support the ALJ's stated reason that the opinion was not supported by the record. Where an ALJ does not provide an explanation is his decision, the Court "cannot affirm based on a post hoc rationale that might have supported the ALJ's conclusion." *Dempsey v. Comm'r of Soc. Sec.*, 454 Fed. Appx. 729, 733 (11th Cir. 2011) (quotation omitted). Moreover, Defendant submits that Dr. Desamour's opinion was discounted because Plaintiff had not completed the recommended physical therapy at the time the opinions were rendered and because Dr. Sharma's opinion is more recent. *See* ECF No. [23] at 7–8. However, these justifications do not point to any inconsistencies between Dr. Desamour's opinion and the record that would justify discounting the medical opinion. Accordingly, the Court finds that the RFC determination is not supported by substantial evidence because the ALJ's decision fails to weigh the medical opinion in accordance with the regulatory requirements. This case should be remanded to permit the ALJ to properly weigh Dr. Desamour's opinion.

**B.  The ALJ's Findings At Step Five Is Supported By Substantial Evidence.**

Social Security Ruling 00-4p provides guidance as to how ALJs must weigh VE testimony and information contained in the DOT. *See* SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). Specifically, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict

between the VE's testimony and the DOT." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).  Thus, the ALJ is required to ask for an explanation of the conflict and, ultimately, to resolve it.  *Id.* at 1363 (noting that SSR 00-4p "provides that the ALJ must explain the resolution of the conflict irrespective of how the conflict was identified") (quotation and emphasis omitted).

In *Washington*, the ALJ described a hypothetical individual that could only perform occasional fine manipulation, also known as occasional fingering.  *Id.* at 1357.  The VE testified that this hypothetical individual could be employed as a table worker or bagger.  *Id.*  The VE specifically testified that his testimony regarding these two jobs was consistent with the DOT.  *Id.*  In his decision denying social security benefits, the ALJ adopted the VE's testimony regarding the available jobs, stating that his determination was consistent with the DOT.  *Id.*  However, the DOT description of table worker and bagger "describes both of these jobs as requiring frequent fingering."  *Id.*  The Eleventh Circuit concluded that there was an apparent conflict between the VE's testimony and the DOT.  *Id.* at 1366.  The Court explained that the different between occasional and frequent "is patent and significant," and as such, that the ALJ had an affirmative duty to resolve this conflict.  *Id.* at 1366–67; *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316–17 (11th Cir. 2021) (concluding that the ALJ was required to resolve the apparent conflict "between an RFC to simple, routine, and repetitive tasks and level 3 reasoning, which requires the ability to apply commonsense understanding furnished in written, oral, or diagrammatical form and to deal with problems involving several concrete variables in or from standardized situations"); *Johnson v. Comm'r of Soc. Sec.*, 782 Fed. Appx. 875, 878 (11th Cir. 2019) ("We believe that there is at least 'apparently' a conflict between an employee limited to 'simple, routine tasks' and one able to 'deal with problems involving several concrete variables.'").

20

Plaintiff argues that because he requires the assistance of a cane, he cannot reach or handle as required by the jobs of ticket taker and marker.  ECF No. [20] at 16.  At the hearing in this case, the ALJ asked the VE to consider a hypothetical individual who, among other things, could "frequently reach in any direction bilaterally, including overhead, handling, fingering, and feeling, however the claimant balances with the assistance of an assistive device, to wit a quad cane, and the claimant is left hand dominant."  R. at 66.  The VE testified that an individual with these limitations could be employed as a ticket taker, ticket seller, and marker.  *Id.*  The VE stated that these are "workstation occupations" such that a "quad cane would not be a problem as long as there's a stool or seat available."  *Id.*

In the opinion, the ALJ specifically noted that there was an apparent conflict between the VE's testimony regarding the standing limitations and the DOT's description of the exertional requirements for ticket taker and marker.  *Id.* at 31.  The ALJ stated, however, that this conflict was resolved by the VE's testimony that "these jobs could be performed while sitting at a workstation."  *Id.*  Thus, although an apparent conflict existed between Plaintiff's functional limitations and the exertional requirements for the jobs provided, the ALJ sufficiently identified this conflict and resolved it.  Specifically, the ALJ noted that despite Plaintiff's limitations, he could perform the jobs identified if he could be seated at his workstation.  The ALJ relied on the VE's testimony that, in his experience, seats are often made available at the jobs provided.  Because the ALJ identified any potential conflict and resolved it, the ALJ's opinion at step five is supported by substantial evidence.  *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (noting that "the ALJ must: (1) identify any apparent conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any

discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved") (quotation omitted).[10]

### C. Plaintiff's Constitutional Claim Fails.

Plaintiff argues that he is entitled to a new hearing before a new ALJ because the ALJ in this case did not have constitutional authority to decide his claim.  ECF No. [20] at 18–19.  Specifically, Plaintiff argues that the Commissioner's appointment was unconstitutional because he could serve a term longer than the President's and could only be removed for cause." *Id.* at 18.  Plaintiff argues that "[t]he ALJ's delegation of authority in this case came from [the Commissioner] and [was] therefore constitutionally defective." *Id.* at 19.  Defendant concedes that the Commissioner's appointment violates separation of powers to the extent it limits the President's authority to remove the Commissioner without cause.  ECF No. [23] at 11.  Defendant argues, however, that this conclusion does not support remanding this case because Plaintiff has failed to show any harm.

The Supreme Court has addressed challenges based on the Appointments Clause and on the President's removal power. *See Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).  In *Lucia*, the Court concluded that where a violation of the Appointments Clause has occurred, the appropriate remedy "is a new 'hearing before a properly appointed' official" that is different from the prior official.  *Lucia*, 138 S. Ct. at 2055 (citation omitted).  However, in *Collins*, the Court concluded that where a for-cause restriction on the President's removal power has been imposed in violation of the Constitution, a new hearing is not required.  *See Collins*, 141 S. Ct. at 1787–88.  The Court explained that a statute which unconstitutionally purports to restrict the President's

---

[10] Notably, Plaintiff did not address this argument in his Reply.

removal power does not automatically void actions taken by that official if there is no basis to conclude that the official lacked the authority to hold his position.  *Id.*  As a result, a new hearing is not the appropriate remedy unless the plaintiff can show a compensable harm, as follows: (1) "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; and (2) "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way."  *Id.* at 1789.

Here, Plaintiff argues that 42 U.S.C. § 902(a)(3), which provides that the Commissioner "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," violates the separation of powers.  ECF No. [20] at 18.  Plaintiff's claim fails because the ALJ's appointment in this case was not ratified by former Commissioner Andrew Saul but was instead ratified in July 2018 by then-Acting Commissioner Nancy Berryhill.  *See* ECF No. [23] at 13.  "As the Acting Commissioner, Ms. Berryhill did not have statutory tenure protection, and thus, could have been removed at will at any time."  *See Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *10 (S.D. Fla. May 4, 2022), report and recommendation adopted, No. 21-CV-21164, 2022 WL 1605318 (S.D. Fla. May 20, 2022) (citing 42 U.S.C. 902(b)(4)).  Because Section 902(a)(3) was inapplicable to the Acting Commissioner, the separation of powers argument is inapplicable.  *See id.*

Plaintiff's argument also fails on the merits.  Plaintiff seeks a new hearing before a new ALJ, a remedy available for Appointments Clause violations *not* for violations of the President's removal power, as is the case here.  In order to receive a new hearing as a remedy for removal power violations, Plaintiff must show that he has suffered compensable harm.  Yet, in his Motion Plaintiff does not even acknowledge this requirement.  In his Reply, Plaintiff states that he has

been injured because "he did not receive a constitutionally valid hearing and adjudication from the ALJ" and "he did not receive a constitutionally valid adjudication poses and decision from the [Appeals Council]." ECF No. [30] at 7. These generalized and conclusory claims fail to establish harm as required under *Collins*. To be sure, Plaintiff does not contend that the Commissioner who appointed the ALJ failed to fulfill any of his duties or that there is any link between the ALJ's decision and the allegedly unconstitutional removal provision. Because Plaintiff has failed to show that he suffered any harm or that the ALJ's decision was unlawful, his constitutional argument fails. *See Watson v. Kijakazi*, No. 21-CV-60516, 2022 WL 1693388, at *7 (S.D. Fla. May 3, 2022), *report and recommendation adopted*, No. 21-CV-60516, 2022 WL 1686526 (S.D. Fla. May 26, 2022) (concluding that the plaintiff's generalized claim that "he did not receive a constitutionally valid hearing and adjudication from an ALJ to which he was entitled" and that "he did not receive a constitutionally valid determination by the Appeals Council to which he was entitled" did not establish harm under *Collins* and did not entitle the plaintiff to a new hearing before a new ALJ); *Fernandez v. Kijakazi*, No. 20-22798-CIV, 2022 WL 1642708, at *10 (S.D. Fla. Mar. 24, 2022) ("[B]ecause Plaintiff fails to show that she suffered compensable harm flowing from the removal restrictions of § 902(a)(3), his motion for summary judgment on the basis of separation of powers must be Denied on its merits").

## IV.    RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [20], be **GRANTED IN PART AND DENIED IN PART**, and Defendant's Motion, ECF No. [23], be **GRANTED IN PART AND DENIED IN PART**. This case should be remanded to the Commissioner for a proper evaluation of Dr. Desamour's medical opinion in accordance with the regulatory requirements.

## V.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on July 6, 2022.

_____

**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**